# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Commonwealth of Virginia

v.

Gregory D. Murphy

April 5, 2001

Case No. CF000517

BY JUDGE ALFRED D. SWERSKY

[I have entered an] order amending the treatment order to permit the administration of antipsychotic drugs over the objections of Defendant. I have noted Defendant's objections. The bases, having been proved by clear and convincing evidence, for allowing the amendment are as follows.

## I. *Medical Appropriateness*

The evidence is clear that the restoration of competency of Defendant cannot be accomplished by means other than the use of antipsychotic drugs. Murphy has endured a four month course of conventional conservative therapy without improvement; in fact, his condition has worsened in terms of his delusional thinking, his irrationality, anger, episodic agitation and grandiose thinking. Such a worsening is manifested by two angry outbursts that resulted in assaults involving two different patients. The rigor of the conservative treatment is shown by the schedule of therapy and therapeutic groups the Defendant was supposed to attend.

The administration of these drugs, will according to the evidence, increase the likelihood of abating the symptoms of the underlying mental condition. Dr. Barnard-Dupree testified that, without the medication, there is no chance that the symptoms will abate.

All witnesses agreed as to the potential side-effects of the administering of these drugs. They range from mere discomfort such as dry mouth,

constipation, and blurred vision to neuroleptic malignancy syndrome evidenced by rigidity and increased body temperature and blood pressure, and to possible cardiac complications. Since these effects are well known, a series of checks have been placed on the medication regimen by the hospital. Patients receiving these medications are constantly observed for the side-effects and may even be prescribed drugs designed to combat the side-effects along with the antipsychotic medication. The more serious side-effects occur after prolonged use. For this reason, the Court has ordered an initial report to the Court and counsel thirty days after the initial administration of the drugs and continuing every sixty days thereafter.

These drugs, both the so called typical or conventional drugs and the newer atypical drugs, have a sufficient record of efficacy for the Court to find that they are appropriate. Adequate measures are in place to protect the Defendant from side-effects.

## II. *Lesser Intrusive Alternatives*

As has already been found, the lesser alternatives of conventional therapy have had no effect. No other drugs such as tranquilizers, sedatives, nor anti-depressant medications are appropriate for Murphy's condition.

Defendant argues that his condition could be caused by organic neurosyphilis, a tertiary syphilis affecting the brain and spinal column. The evidence reveals that this organic disease, as well as several others, could "masquerade" as a psychotic condition such as paranoid-schizophrenia, the diagnosis here. Defendant argues that since he has a medical history of syphilis, a lumbar puncture or spinal tap should be done to rule out the neurosyphilis before the use of the antipsychotic drugs.

The evidence is clear that Defendant does not suffer from tertiary syphilis. The physical symptoms of palsies in the cranial nerves, tremors, facial droop, fever, headaches and stiffness, visual impairment, and reactive pupils have not been observed in Defendant. Dr. Blumberg did testify that he observed a slight or fine tremor, some memory impairment, and some attention deficit and some pupillary irregularity. However, no one on staff at the Liberty Riverside Forensic Unit noted any such symptoms during Murphy's four month stay.

In addition, the medical evidence shows that tertiary or neurosyphilis has been nearly eradicated in this country. While the numbers are not precise, it appears that one per cent or less of patients treated for primary syphilis develop a neurosyphilis. Murphy was treated, and subsequent RPR testing does not indicate the active presence of syphilis. The blood test offered by Defendant only shows that Murphy had syphilis "at one time" in his life.

Hence, the Court finds that the lesser intrusive alternative of a lumbar puncture to test for syphilis is not appropriate. The evidence did indicate that, at some time, Defendant had refused this test as well as HIV testing.

### III. *Dangerousness*

There is no doubt that Defendant presents a danger to others. His criminal history includes crimes of violence; his violent outburst unprovoked in the courtroom and the two incidents of assaults upon other patients leave the Court no doubt as to his dangerousness.

The evidence is also clear that isolating Defendant in a hospital setting is inappropriate. Isolation is not a medically approved form of treatment. In fact, it is used only in emergencies and is strictly regulated within the hospital. Therefore, Murphy will have constant contact with staff, doctors, and other patients. It is clear they are at risk if Defendant's symptoms are not treated.

### IV. *Compelling State Interest*

While it has never been decided that the state's interest in restoring a defendant's competency for trial on criminal charges is a sufficient state interest to overcome his protected liberty interest in not being medicated involuntarily, *see, Riggins v. Nevada*, 504 U.S. 127, 118 L. Ed. 2d 479, 112 S. Ct. 1810 (1992), this Court need not decide that issue.

It is a compelling state interest that Murphy's symptoms be treated in a medically appropriate way because of the danger he represents to those in his presence. Under the strictest of scrutiny tests, such an interest is compelling enough to overcome Murphy's protected right to be free from involuntary treatment.

### V. *Defendant's Trial Rights*

Defendant argues that restoring him to competency would effect his ability to defend himself at trial. He argues that the picture the trier-of-fact will have of him at trial may not be the same as at the time of the alleged offense. This is significant, he says, if an insanity defense is to be raised.

These matters will be dealt with at subsequent hearings as mandated by statute (Code of Va. § 19.2-169.2(B)), in the event there is a claim that Murphy's competence to stand trial has been restored.

112

The Commonwealth's motion to amend the treatment order to allow the use of antipsychotic medications over the objections of Defendant is granted. The objections of Defendant as set forth in the record are noted.